UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| TYRONE HARRIS, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | No. 6:18-CV-189-REW |
| | ) | |
| v. | ) | |
| | ) | |
| J.A. BARNHART, Warden, | ) | OPINION AND ORDER |
| | ) | |
| Respondent. | ) | |

*** *** *** ***

The Court initially screened Tyrone Harris's 28 U.S.C. § 2241 petition. DE #30 (Memorandum Opinion & Order).[1] As there discussed, Harris (sentenced in the Western District of Missouri) relies jointly on *Mathis v. United States*, 136 S. Ct. 2243 (2016) and the Eighth Circuit's subsequent decision in *United States v. Naylor*, 887 F.3d 397 (8th Cir. 2018) to argue that the convictions used to enhance his sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), are no longer qualifying predicates per the categorical approach. DE #1 (Petition).

At the time of initial screening, upon surveying the balance of Sixth Circuit published authority (namely, *Hill v. Masters*, 836 F.3d 591 (6th Cir. 2016)) and the then-existing trend of unpublished Circuit cases building on the sharp pivot of *Hill*, the Court permitted Harris to proceed with his ACCA claim via § 2241. *See id.* at 4–6 (citing and discussing unpublished Sixth Circuit decisions applying *Hill* in analogous scenarios).[2] The Court thus appointed Harris counsel and

---

[1] The Court incorporates by reference its DE #30 recitation of the factual and procedural background relevant to Harris's petition.
[2] For example, as the Court noted in DE #30, an unpublished 2017 Sixth Circuit panel permitted a petitioner to pursue an ACCA claim—involving the same Missouri second-degree burglary

1

directed record development on outstanding issues, including whether Harris had any additional ACCA-qualifying convictions and party views as to how (and where) the case should proceed on resentencing, if applicable. DE #30 at 8.

While these issues were pending, a Sixth Circuit case concerning the correct interpretation and application of *Hill* (and its three-part-test variants) was progressing through the appellate channel. The Sixth Circuit ultimately decided the case—via a published opinion—in late September 2019. *See Wright v. Spaulding*, 939 F.3d 695, 705 (6th Cir. 2019) (reiterating prior precedent and holding "that a federal prisoner cannot bring a claim of actual innocence in a § 2241 petition through the saving clause without showing that he had no prior reasonable opportunity to bring his argument for relief[]"). This Court directed additional briefing concerning the impact of *Wright*, if any, in this case. DE #51. The parties disagree about *Wright*'s effect—petitioner, through counsel, argues that *Wright* is distinguishable because adverse Eighth Circuit precedent, in place at the time of Defendant's sentencing, appeal, and initial § 2255 motion, held that Missouri second-degree burglary was a valid ACCA predicate.[3] DE #53. Accordingly, he views the *Mathis* decision

---

conviction as here—via § 2241 in reliance on *Hill*. *See Sutton v. Quintana*, No. 16-6534, 2017 WL 4677548, *1 (6th Cir. July 12, 2017). The *Sutton* panel used one of the two (similar, but nonidentical) three-part *Hill* tests as its decisional framework. *Id.*; *see Hill*, 836 F.3d at 595 (requiring, for a petitioner to demonstrate that 28 U.S.C. § 2255 is an inadequate or ineffective remedy and bring, per the § 2255(e) savings clause, a misapplied-sentence claim via § 2241, "(1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion, and (3) that the misapplied sentence presents an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect."). The *Sutton* Court found that *Mathis* was a retroactively applicable Supreme Court case of statutory interpretation that was, at the time of the petitioner's direct appeal and 28 U.S.C. § 2255 motion, unavailable. *See* 2017 WL 4677548, at *2. Having found the first and second *Hill* prongs met, the Court further found the misapplied sentence to be a fundamental defect because of later Eighth Circuit law that, based on *Mathis*, found the Missouri second-degree burglary statute an invalid ACCA predicate. The *Sutton* analytical trend continued with *Muir v. Quintana*, No. 17-6050, 2018 WL 4276133, *2 (6th Cir. Apr. 26, 2018), and other subsequent unpublished decisions. *See* DE #30 at 4, 7 n.5.

[3] *See, e.g., United States v. Nolan*, 397 F.3d 665, 666 (8th Cir. 2005) (noting that the Eighth Circuit had "consistently held that burglary is a predicate offense under § 924(e)" and collecting cases;

itself as required in this case, unlike in *Wright*, to remove barriers to prior assertion of his ACCA argument. *Id.* The Government, however, emphasizes that *Wright* clarified (and narrowed) *Hill*, reinvigorating the fundamental "no reasonable opportunity" test. DE #54. The Government maintains that because the categorical approach preceded *Mathis*, Harris did not need *Mathis* itself to test his ACCA claim, and that he cannot demonstrate lack of reasonable prior opportunity to assert it.

The *Wright* decision carefully traced the roots of the Circuit's savings clause jurisprudence and, functionally, curbed the expansive interpretive trend that had been emerging in unpublished cases; the *Wright* Court hewed closely to § 2255(e)'s text and foundational principles. 939 F.3d at 697–705. The Circuit has offered similar guidance since, further elucidating the contours of the central "no reasonable opportunity" test that *Wright* (and earlier precedent) emphasized. Particularly relevant here—given Harris's reliance on the Eighth Circuit's reversal, in *Naylor*, of its previously binding precedent holding that Missouri second-degree burglary convictions were valid ACCA predicates—is the Sixth Circuit's recent resolution of whether subsequent *circuit* decisions are sufficient to demonstrate that a prisoner had no reasonable opportunity to test a claim via § 2255 for savings clause purposes. *See Hueso v. Barnhart*, 948 F.3d 324, 332 (6th Cir. 2020) (addressing whether "a new statutory decision from a circuit court suffice[s] to show § 2255's inadequacy[]"). Synthesizing the lessons of prior decisions, the Court answered that question in the negative: "We now turn the facts of our prior cases into a holding. In addition to whatever else

---

*United States v. Olsson*, 742 F.3d 855, 856 (8th Cir. 2014). Indeed, even post-*Mathis*, the Eighth Circuit found that Missouri second-degree burglary was a valid ACCA predicate. *See United States v. Sykes*, 844 F.3d 712, 716 (8th Cir. 2016). It was not until 2018 that the en banc Eighth Circuit reversed course and held that Missouri second-degree burglary is not categorically an ACCA violent felony. *See United States v. Naylor*, 887 F.3d 397 (8th Cir. 2018).

3

our reasonable-opportunity standard demands, it requires a Supreme Court decision that adopts a new interpretation of a statute after the completion of the initial § 2255 proceedings." *Id.*

As *Hueso* confirms, *Naylor*'s ultimate vindication of Harris's ACCA argument in the Eighth Circuit post-*Mathis* cannot demonstrate § 2255 ineffectiveness or inadequacy for savings clause purposes. *See Hueso*, 948 F.3d at 335 ("[L]ater circuit decisions do not suffice to prove that an initial § 2255 motion is inadequate or ineffective to test a claim."). The only question remaining, then, is whether *Mathis*'s arrival, after the completion of Harris's initial § 2255 proceedings, is sufficient to demonstrate that the § 2255 remedy itself was inadequate or ineffective to test his ACCA claim. Critically, *Wright* emphasized that the *Mathis* decision itself "matter[ed] only, if at all, because of the *new legal arguments* it ma[de] available." *Wright*, 939 F.3d at 705 (footnote omitted) (emphasis in original). The Court thus noted that, though "Wright could not [have] cite[d] *Mathis*, specifically, before it existed[,]" "a claim for habeas relief is more than the talismanic force of a new case name." *Id.* And, per the *Wright* Court, *Mathis* itself actually generated no *new legal arguments*; "[i]n fact, it did not even break new ground[.]" *Id.* The categorical approach had been in place for decades, and *Mathis*—expressly drawing from earlier precedent—merely reiterated it and clarified the means-elements analysis for judging divisibility. *See Mathis*, 136 S. Ct. at 2251 (recognizing the "longstanding principles" requiring an elements-based, categorical approach to ACCA predicate analyses and discussing the categorical approach's basis in *Taylor v. United States*, 110 S. Ct. 2143 (1990), and later application in *Descamps v. United States*, 133 S. Ct. 2276 (2013)); *id.* at 2257 ("Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements."). Accordingly, as the Court recognized, Wright did not require *Mathis* to argue that an elements-based approach invalidated his ACCA predicate—and, thus, he could not

4

pass through the savings clause simply by noting an inability to specifically cite *Mathis* at sentencing, on direct appeal, or in his initial § 2255 motion. *See Wright*, 939 F.3d at 705 (observing that "Wright's claim never needed *Mathis*").

The Court found that Wright was required "*also* [to] show that binding adverse precedent (or some greater obstacle) left him with no reasonable opportunity to make his argument any earlier, either when he was convicted and appealed or later when he filed a motion for postconviction relief under section 2255[.]" *Id.* at 703 (internal quotation marks and citation omitted) (emphasis in original). The Court concluded that Wright had not so shown, in part because Wright did not "need *Mathis* to clear a path through erroneous Fourth Circuit precedent[,]" *id.* at 706, as no binding Fourth Circuit authority, in place at the time of Wright's sentencing, appeal, or one-year window for filing an initial § 2255 motion on any ground, held that Wright's predicate was valid under the ACCA. "Thus," as the Court ruled, "Wright had several opportunities to raise his so-called '*Mathis* claim,' free of any procedural impediments or hostile precedents. That he failed to seize them does not mean that § 2255 was 'inadequate or ineffective' to test his sentence." *Id.* Wright's attempt to access § 2241 through the savings clause therefore failed.

As Harris argues, though, this case differs—in an important way—from *Wright*. Unlike Wright's claim in relation to then-applicable Fourth Circuit law, Harris's claim *did* face binding adverse precedent in the Eighth Circuit—cases holding that Missouri second-degree burglary qualified as a valid ACCA predicate. Such precedent was in place at the time of Harris's sentencing, appeal, and initial § 2255 opportunity. *See supra* note 3. By 2005, the Eighth Circuit had "consistently held that burglary is a predicate offense under § 924(e)[.]" *Nolan*, 397 F.3d at

5

666 (collecting cases).[4] And, in February 2014—while Harris's direct appeal pended—the Eighth Circuit, following remand for further consideration in light of *Descamps*, again held that Missouri second-degree burglary qualified as an ACCA predicate. *Olsson*, 742 F.3d at 856.[5] Without discussing its earlier precedent concerning the burglary offense's predicate status, the Eighth Circuit—applying *Taylor* and *Descamps*—summarily found the statute indivisible and, thus applying the categorical approach to the entire criminal statute, held that the elements were the same as those of generic burglary. *Id.* Harris thus faced a formidable wall of Eighth Circuit precedent.

The timing and facts here too differ from that in *Hueso*; in that case—though the petitioner faced binding adverse precedent in the Ninth Circuit at the time of his sentencing, direct appeal, and initial § 2255 motion—the new Supreme Court case upon which the petitioner relied (*Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010)) issued *before* any decision on Hueso's direct appeal and, thus, also before Hueso's initial § 2255 opportunity. Accordingly, the Court reasoned that "Hueso faced no 'obstacle' to citing this Supreme Court decision in support of his sentencing claim in earlier proceedings, [and] he had a 'reasonable opportunity' to rely on the decision." *Hueso*, 948 F.3d at 339–40 (quoting *Wright*, 939 F.3d at 703 (citation omitted)). The Court flatly rejected Hueso's contention that he could not make an argument, based on the new

---

[4] Though the bulk of cited cases discuss the Guidelines career offender provision rather than the ACCA, the Eighth Circuit noted that it "construe[s] 'violent felony' under 18 U.S.C. § 924(e)(B)(ii) to have the same meaning as crime of violence' under U.S.S.G. § 4B1.2." *Nolan*, 397 F.3d at 666.

[5] To clarify the relevant chronology in relation to Harris's case: The Western District of Missouri sentenced Harris in September 2012; he directly appealed that same month, and the Eighth Circuit denied his appeal in April 2014. During that period, *Descamps* issued (in June 2013), and the *Olsson* panel issued its post-remand decision in February 2014. The district court rejected Harris's initial § 2255 in March 2015.

statutory principles espoused in *Carachuri-Rosendo*, at the relevant times (there, appeal or initial § 2255 opportunity) because of the then-binding, hostile Ninth Circuit precedent:

> In response, Hueso argues that he could not have relied on *Carachuri-Rosendo* on direct appeal or in his initial § 2255 motion because of the then-existing Ninth Circuit precedent that foreclosed his claim. Yet the "new legal arguments," *see Wright*, 939 F.3d at 705, that *Carachuri-Rosendo* generated included the argument that later won in the Ninth Circuit—that this new decision overruled prior circuit precedent interpreting terms like "felony drug offense," *see Valencia-Mendoza*, 912 F.3d at 1219. Indeed, if Hueso had timely raised his claim, the Ninth Circuit may well have found that its earlier decisions conflicted with this "higher intervening authority" in his case, not in Valencia-Mendoza's case. *Id.*

*Id.* at 340. Critical, then, in Hueso's case was the fact that *Carachuri-Rosendo*—the intervening Supreme Court case on which he relied—generated new legal arguments that vitiated the earlier Ninth Circuit precedent. As this authority for the relevant new legal concept (*i.e.*, the new interpretative treatment of the term "felony drug offense") existed as early as Hueso's direct appeal, he had available the tools to argue that the extant Ninth Circuit precedent was inconsistent with the state of law in the Supreme Court. The Supreme Court had already recognized argument legitimacy; that the Ninth Circuit stood against him was thus not a savings clause ticket. For these reasons, the Court found that Hueso had not demonstrated § 2255's inadequacy or ineffectiveness, and it denied him access to § 2241 via § 2255(e).

To some degree, Harris's situation lies in a gap between *Wright* and *Hueso*. Like the petitioner in *Hueso*, binding adverse circuit precedent foreclosed Harris's claim at the relevant procedural times. But, in contrast with the *Hueso* circumstances, the Supreme Court case upon which Harris purports to rely (*Mathis*) did not then exist—thus, Harris could not have used that case itself to clear a path through the erroneous and hostile Eighth Circuit precedent, as Hueso could have done with the new legal arguments generated from *Carachuri-Rosendo*. On the other hand, like the petitioner in *Wright*, Harris's reliance on *Mathis*, in particular, is problematic

7

because *Mathis* did not generate new legal arguments Harris needed to confront the hostile precedent in *Olsson* and its predecessors. And, as *Hueso* (building on *Wright*) confirms, the savings clause "requires a Supreme Court decision that adopts a *new interpretation* of a statute after the completion of the initial § 2255 proceedings." *Hueso*, 948 F.3d at 333 (emphasis added). The question then is: recognizing the hostile Eighth Circuit precedent Harris faced, was the *Mathis* decision itself necessary to gird Harris's argument that the categorical approach, if correctly applied, invalidated Missouri second-degree burglary's ACCA predicate status? Or, was that argument available to Harris before *Mathis* issued, despite the fact that it faced an uphill battle against circuit precedent? The analytical path laid by *Wright*, *Hueso*, and earlier § 2255 authority in the Sixth Circuit goes only so far in this case—the mapping stops before the journey ends.

At the outset, some difficulty exists in ascertaining the persisting value of *Mathis* on collateral review. To be sure, the Sixth Circuit has held that "*Mathis* applies retroactively[]" to petitions under § 2241. *Sutton*, 2017 WL 4677548, at *2; *accord Muir*, 2018 WL 4276133, at *2 (observing that "*Descamps* and *Mathis* apply retroactively inasmuch as their holdings are dictated by precedent"). Per the savings clause tests as *Hill* particularly phrased them, retroactive case applicability is critical to invoking § 2255(e). *See, e.g.*, *Hill*, 836 F.3d at 595 (requiring, among other things, "(1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion"). As this Court has previously recognized, the limits of *Hill*'s retroactivity requirement are not entirely clear—but, at minimum, it is apparent that old-rule cases like *Mathis* are not necessarily excluded.[6] Still, (at least) equally central to the Court's *Mathis*

---

[6] *See Fraker v. Butler*, No. 6:18-CV-201-REW, 2019 WL 3302815, at *5 n.5 (E.D. Ky. July 23, 2019) ("What then is the force of *Hill*'s 'retroactive' requirement? It seems clear, to this Court, that Circuit applications have winnowed that limit to cases that announce new non-retroactive rules. The rationale of *Sutton* and, *e.g., Muir v. Quintana*, No. 17-6050, 2018 WL 4276133, *2 (6th Cir. Apr. 26, 2018), make plain that Supreme Court cases that merely apply 'old rule[s]' are

8

appraisal in this scenario is the savings clause-specific (as distinct from the largely § 2255-specific analytical authority invoking the "new/old rule" and "retroactivity" concepts) requirement that the new case itself have worked an interpretative change that opened a previously closed argument door:

> Sometimes courts have phrased the saving-clause test in terms of whether a Supreme Court case announced a "new rule." *See, e.g., Chazen v. Marske*, 938 F.3d 851, 861–62, 2019 WL 4254295, at *8–9 (7th Cir. 2019) (noting confusing variations in how the Seventh Circuit's precedents have stated the test); *id.* at 865–66, 2019 WL 4254295, at *12–13 (Barrett, J., concurring) (same). Yet this phrasing risks confusing the test for saving-clause access with *Teague v. Lane*'s "new rule" test for retroactivity, a separate habeas-related doctrine. *See* 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L.Ed.2d 334 (1989). This "new rule" concept is ubiquitous in habeas law—both because *Teague* is an important habeas doctrine and because some AEDPA provisions incorporate it by reference. *See, e.g.*, 28 U.S.C. § 2255(h)(2). So courts sometimes fall back on this familiar "new rule" language in the context of saving-clause cases. But luckily our circuit has avoided this mistake. The post-*Bailey*-and-AEDPA saving-clause caselaw is not based on *Teague*. Nor does it interpret any provisions of AEDPA. (On the contrary, it exists to circumvent AEDPA.) Rather than mirroring *Teague*'s "new rule" test, the central idea of the post-*Bailey*-and-AEDPA saving-clause cases is "whether an intervening case of statutory interpretation opens the door to a previously foreclosed claim." *Chazen*, 938 F.3d at 862, 2019 WL 4254295, at *9.

*Wright*, 939 F.3d at 705 n.7.

Here, *Mathis*'s import on collateral review falters. Indeed, it is precisely *Mathis*'s reliance on established law that minimized its savings clause value in the *Wright* Court's view. *See Wright*, 939 F.3d at 705–06 (observing that "*Mathis* did not invent the categorical approach . . . In fact, it did not even break new ground[]" and reasoning that, accordingly, "Wright's claim never needed *Mathis*"). Notably, as *Wright* and other cases recognize, *Mathis* itself claimed no novel take. 136 S. Ct. at 2257 ("For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements."); *id.* ("Our precedents make this a

---

not excluded by *Hill*'s 'retroactive' limits. Why? Because old rules apply on collateral review. *Hill*, an issue fountain, may or may not be the outer limit of the savings clause.").

straightforward case."); *accord In re Conzelmann*, 872 F.3d 375, 376 (6th Cir. 2017) ("The Court's holding in *Mathis* was dictated by prior precedent (indeed two decades worth)."). And, at least ten Sixth Circuit judges have endorsed this perspective. *See, e.g.*, *Anderson v. Terris*, No. 18-2400, 2019 WL 6690055, at *2 (6th Cir. Nov. 19, 2019) (quoting *Wright*, 939 F.3d at 705) ("But as this court recently explained, '*Mathis* did not invent the categorical approach.' . . . Instead, *Mathis* merely applied prior precedent . . . *Taylor* was decided well before Anderson filed his first § 2255 motion; thus he had an opportunity to raise a *Mathis*-type claim[.]"); *Randolph v. Streeval*, No. 19-5135, 2020 WL 832896, at *2 (6th Cir. Feb. 7, 2020) ("Nor can Randolph rely on *Mathis v. United States*, 136 S. Ct. 2243 (2016), even though it is a Supreme Court case he did not raise previously. For one thing, "[a] new case matters only, if at all, because of the new legal arguments it makes available." *Wright, 939 F.3d at 705*. *Mathis* did not provide Randolph with a new legal argument. It merely reinforced a longstanding rule[.]"); *Silva v. Kizziah*, No. 19-5914, 2020 WL 710789, at *2 (6th Cir. Jan. 9, 2020) ("[T]he principles underlying [*Descamps* and *Mathis*] were established much earlier, beginning with *Taylor v. United States*, 495 U.S. 575 (1990).").

After *Wright*, what—if anything—of value is left of *Sutton*, *Muir*, *etc.*'s conclusions that *Mathis* applies retroactively in the savings clause context? Importantly, it seems that—even if *Mathis* is "retroactive"—courts must assess, attendant to the foundational reasonable opportunity analysis, whether the petitioner in fact *needed* the case to present his argument. On one end of the spectrum is the position that *Mathis* itself—merely relying on and reiterating established interpretative rules—cannot ever be *needed* to test an ACCA argument, as the necessary *legal arguments* existed as early as *Taylor*. The above-cited cases, as well as *Wright* and *Hueso*, suggest this as the proper take.

But what, then, is the impact of foreclosing circuit precedent on a *Mathis*-reliant petitioner's savings clause venture? Both the *Wright* and *Hueso* Courts thought it relevant that a petitioner have (and demonstrate) some avenue to break through a wall of erroneous circuit precedent. In *Hueso*, it was the genuinely new legal arguments generated in *Carachuri-Rosendo*, which preceded Hueso's appeal and initial § 2255, despite the persisting hostile circuit precedent. And in *Wright*, it mattered not that *Mathis* came after Wright's sentencing, appeal, and first chance at filing a § 2255, because the case unearthed no new arguments, *and* Wright did not need the case itself "to clear a path through erroneous Fourth Circuit precedent[,]" as there was none at the relevant times. *Wright*, 939 F.3d at 706. The Court thus wonders: Where hostile precedent exists in the applicable circuit, at the relevant times, to what extent—if at all—does *Mathis* (or any other intervening Supreme Court case that works no pertinent interpretative change) matter? In other words, was Harris required to argue (at sentencing, on appeal, or in his § 2255 motion) that *Taylor*'s elements-based interpretation principle—in place *well* before his case—invalidated the subject ACCA predicates, even in the face of binding Eighth Circuit precedent that directly held his prior offenses to be a qualifying predicates? Similarly, did Harris have a "reasonable opportunity" to argue, before conclusion of his direct appeal or in his initial § 2255 motion, that *Olsson*—directly based on *Descamps*—misapplied the categorical approach and, accordingly, reached the wrong result? Or is this situation enough to render the argument functionally unavailable in his case, for savings clause purposes, until a case like *Mathis* came through and, by way of a fresh example, offered Harris a renewed chance to challenge the post-*Taylor*-and-*Descamps* Eighth Circuit ACCA cases?

Judge Thapar's concurrence suggests Harris had all the opportunity required. *See Wright*, 939 F.3d at 707 (Thapar, J., concurring) ("Section 2255 is not inadequate or ineffective to test the

11

legality of [a prisoner's] detention just because binding circuit precedent is against him at the time of his conviction or his first motion. Applying AEDPA in such cases may seem unfair. Yet in enacting AEDPA, Congress weighed error correction against finality and made some difficult policy judgments. And for us to second-guess those judgments is to usurp Congress's role.") (internal quotation marks and citations omitted); *id.* at 709 ("In our system, litigants are bound by precedent all the time. Even precedent that we later recognize was incorrect. In this circuit, when our precedent cuts against a party, we expect that party to (1) distinguish it, (2) persuade us to overrule it en banc, or (3) persuade the Supreme Court to correct our error. In the meantime, we go on applying it."). But, no Sixth Circuit majority (or *en banc* Court) has yet directly and conclusively made the answer in this scenario clear. Nevertheless, the Court grapples with the question in real-time and must resolve this case based on existing authority and its perception of the Circuit's path.

At bottom, it is clear—from *Wright* and *Hueso*, and based on the lessons of earlier savings clause precedent—that, to benefit from § 2255(e), Harris must rely upon an intervening Supreme Court decision that adopts a new interpretation of a statute after the completion of initial § 2255 proceedings and demonstrate that he had no reasonable opportunity to assert the legal arguments generated by that case either at the time of sentencing, on direct appeal, or in his initial § 2255 motion. *See Hueso*, 948 F.3d at 333 ("We now turn the facts of our prior cases into a holding. In addition to whatever else our reasonable-opportunity standard demands, it requires a Supreme Court decision that adopts a new interpretation of a statute after the completion of the initial § 2255 proceedings."); *Wright*, 939 F.3d at 703 ("[I]n this circuit, a federal prisoner who has already filed a § 2255 motion and cannot file another one cannot access § 2241 just because a new Supreme Court case hints his conviction or sentence may be defective. Rather, the prisoner must also show

12

that binding adverse precedent (or some greater obstacle) left him with 'no reasonable opportunity' to make his argument any earlier[.]").

Ultimately, though *Mathis*'s habeas role is shifting (with recent cases minimizing its effect and relevance in the savings clause context), it is clear that the only interpretative *change* it could be said to have worked was not a change needed to test Harris's actual argument.[7] *Mathis* refined (perhaps, even crafted) the proper manner of distinguishing between means and elements in a statute and, relatedly, thus determining when to apply the categorical versus the modified categorical approach. *Mathis*, 136 S. Ct. at 2250 ("The issue before us is whether ACCA treats this kind of statute as it does all others, imposing a sentence enhancement only if the state crime's elements correspond to those of a generic offense—or instead whether the Act makes an exception for such a law, so that a sentence can be enhanced when one of the statute's specified means creates a match with the generic offense, even though the broader element would not."). The Supreme Court found that, by treating portions of the underlying Iowa burglary statute as elements, rather than means, the lower court improperly found the statute divisible, applied the modified categorical approach, and consulted the petitioners' underlying case records pursuant to *Shepard v. United States*, 125 S. Ct. 1254 (2005). *Mathis* teaches that, instead, where a statute identifies mere alternative means of satisfying a single element, rather than alternative elements signifying distinct crimes, courts should follow the categorical, rather than the modified categorical, approach in

---

[7] Harris's argument, in short, turns on the precise scope of the phrase "inhabitable structure" in the at-issue Missouri second-degree burglary statute and inquiry into whether, applying the categorical approach to the statute as a whole, the phrase renders the Missouri statute broader than generic burglary. As Harris argues, *Naylor* ultimately concluded that the Missouri statute is categorically broader than its generic counterpart, disqualifying it as an ACCA predicate. 887 F.3d at 400 ("Under the categorical approach, Naylor is not subject to an enhanced sentence under the ACCA, as the statutory definition of 'inhabitable structure' is broader than the locational element of generic burglary.").

analyzing whether the statute's elements—as a whole, inclusive of all potential alternative means—match or are narrower than the generic crime's reach. Though *Mathis* clarified *when* to apply the categorical approach (*i.e.*, finding it equally applicable to statutes with mere alternative means), it did not alter the process of applying the categorical approach to an indivisible statute.

Critically, the lesson *Mathis* taught—how to parse means from elements and avoid erroneously applying the modified categorical approach—was not necessary to Harris's argument. Harris faced extant Eighth Circuit precedent (*Olsson*, etc.) that *already* treated Missouri second-degree burglary as a single, indivisible crime (with only one set of elements) and, accordingly, applied the categorical approach to the entire statute. The problem, for Harris, was that the cases reached an outcome adverse to his position. As a practical matter, this would have required Harris to argue that the Eighth Circuit in *Olsson* misapplied *Taylor*, *Descamps*, etc.—and improperly analyzed the statute under the categorical approach—in any effort to "test" his current argument on direct appeal or in an initial § 2255 motion. *Olsson* directly purported to apply *Descamps*, no less, in finding the statute categorically a predicate. The task of arguing against erroneous circuit precedent, based on the view that it misapplies existing Supreme Court principles, is a difficult but common one.[8] As a legal matter, Harris needed only the earlier Supreme Court cases outlining the categorical approach, with its inveterate pedigree, to make his ACCA argument in the face of then-existing adverse Eighth Circuit precedent.[9] *Mathis* itself did not generate any new legal principles

---

[8] The Court notes as an aside, in this particular case, that there was no doubt room for such a substantive argument. *Olsson*—after the *Descamps*-based remand—conclusorily applied the categorical approach (in no more than one paragraph), without relying on any earlier precedent, and summarily found that the predicate qualified, without real analysis. A deeper dive into the reach of "inhabitable structure" was primed and waiting in the wings.

[9] Though *Naylor* ultimately relied on *Mathis* in reversing *Sykes*'s decision to apply the *modified* categorical approach—in other words, in deciding *when* the categorical approach should apply—*Mathis* played no role in the Eighth Circuit's (brief) analysis of the categorical approach's actual application and outcome. *Mathis* was needed for the Eighth Circuit to correctly travel from *Sykes*

or work any statutory interpretation change (if it can be said to have changed anything at all) that was necessary to raise (*i.e.* to "test") Harris's particular claim. It follows that, *at minimum* in this case, *Mathis* cannot serve as the required intervening Supreme Court case adopting a new statutory interpretation supplying Harris's argument.[10] *See Hueso*, 948 F.3d at 333; *Mathis*, 136 S. Ct. at 2251–52 (quoting *Taylor*, 110 S. Ct. at 2159, and *Descamps*, 133 S. Ct. at 2283) ("Accordingly, a sentencing judge may look only to 'the elements of the [offense], not to the facts of [the] defendant's conduct.' [*Taylor*, 110 S. Ct. at 2159] . . . That simple point became a mantra in our subsequent ACCA decisions. At the risk of repetition (perhaps downright tedium), here are some examples . . . [M]ost recently (and tersely) in *Descamps*: 'The key [under ACCA] is elements, not facts.' [ ] 133 S. Ct. at 2283.") (internal footnote omitted).

Still, in *Wright*, the Court thought it relevant—despite *Mathis*, per the Court, being unnecessary because it generated no new arguments—that the petitioner *also* faced no foreclosing circuit precedent. Would *Wright* have come out differently, and found the savings clause requirements satisfied, if there had been such precedent? Or would *Mathis*'s lack of novel evaluative principles, in any event, have precluded relief in that case? *Hueso* offers some guidance on this topic; it expressly imposes—"[i]n addition to whatever else [the] reasonable-opportunity standard demands" vis-à-vis *Wright*, etc., a requirement that the relied-upon intervening Supreme Court case adopt a *new* interpretation of a statute. *Hueso*, 948 F.3d at 333. Indeed, *Hueso* dealt

---

to *Naylor*, but it was not needed for it to progress from *Olsson* to *Naylor*. The only *Olsson*-to-*Naylor* change was the result of categorical approach application. <u>*Olsson* misapplied the categorical approach, but it *did* apply the categorical approach—Harris's ultimate aim.</u>

[10] *Hueso*, etc. inherently contain an implicit relevance requirement. It would be nonsensical to read the cases as permitting reliance on *any* intervening Supreme Court case adopting a new statutory interpretation, regardless of its connection (or lack of connection) to the statute and argument the petitioner now raises. It is axiomatic that the savings clause requires an intervening case that is analytically applicable to the petitioner's claim.

15

with adverse circuit precedent, but concluded that such did not *foreclose* the petitioner's arguments because the Supreme Court case generating them existed at the relevant times in the petitioner's appeal and collateral attack process. *Id.* at 340 (rejecting the petitioner's argument that, due to adverse circuit precedent, "he could not have relied on *Carachuri-Rosendo*"). *Hueso* suggests, then, that—where the Supreme Court has already supplied the necessary legal arguments—contrary adverse circuit precedent does not foreclose assertion of the argument. This is consistent with fundamental savings clause principles underlying this Circuit's precedent on the topic. *See, e.g.*, *In re Davenport*, 147 F.3d 605, 610 (7th Cir. 1998) ("Nichols could not use a first motion under [§ 2255] to obtain relief on a basis not yet established by law."); *Wright*, 939 F.3d at 702 (discussing *Davenport*'s centrality to the conclusion in *Martin v. Perez*, 319 F.3d 799 (6th Cir. 2003), and reasonable opportunity standard). Accordingly, adverse circuit precedent may only officially foreclose a petitioner's argument, in the savings clause context, where no Supreme Court case yet provides a basis for the argument's vindication.

Conversely, where the complete legal basis exists, and circuit precedent simply has not caught up (or, as in this case, has continued to get it wrong), the argument—though perhaps difficult to win, as a practical matter—is available, and a reasonable opportunity exists to make it, for savings clause purposes. Thus, because *Mathis* added nothing new—at least, *relative to Harris's instant ACCA claim*—and because the legal basis (correct categorical approach application) for that claim was established well before Harris's case, he had a reasonable opportunity to test it earlier, whether at the time of sentencing, direct appeal, or the initial § 2255 motion. *Mathis* applied the same categorical approach as *Descamps* (rooted in *Taylor*). *Olsson* applied *Descamps* and found the Missouri statute a categorical predicate. *Sykes* later wrongly treated the statute as divisible, but *Naylor* corrected that, returned to the categorical approach, and

16

disagreed with the *Olsson* result. Harris, all along, could have argued just what the defendant in *Olsson* tried—to convince the Eighth Circuit that Missouri defined second-degree burglary in a way broader than the ACCA's generic definition. *Mathis* did not originate that argument, and *Mathis*, ultimately, just applied well-worn categorical analysis to the state statute involved. As with the petitioner in *Wright*, *Mathis* gave no necessary lift to the underlying relief theory. Accordingly, Harris has not shown that § 2255, as a vehicle, was inadequate or ineffective to test his current argument.

This decision gives the Court no pleasure and surely will be more than a disappointment to the over-sentenced Harris. The habeas world, one of rules, requirements, deadlines, and frequent dead ends, is one where values of finality and ultimate justice sometimes clash. The Court can say only that it endeavors to follow the cases, which themselves endeavor to follow the statutes and Constitution, to reach the decision required.

For all of these reasons, the Court **DENIES** Harris's petition brought under 18 U.S.C. § 2241. A corresponding Judgment follows.

This the 25th day of March, 2020.

Signed By:
*Robert E. Wier* / REW
**United States District Judge**